UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CASSANDRA S.,[1]     )
            )
    Plaintiff,   )
            )
     v.     )  No. 1:18-cv-00328-JRS-MPB
            )
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security, )
            )
    Defendant.  )

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

  Plaintiff Cassandra S. ("Ms. S.") applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") from the Social Security Administration ("SSA") on May 3, 2016, alleging an onset date of March 1, 2013. [ECF No. 7-2 at 17.] Her applications were initially denied on September 21, 2016, [ECF No. 7-4 at 4; ECF No. 7-4 at 8], and upon reconsideration on December 27, 2016, [ECF No. 7-4 at 14; ECF No. 7-4 at 21]. Administrative Law Judge Robert Long (the "ALJ") conducted a hearing on July 17, 2017. [ECF No. 7-2 at 41-63.] The ALJ issued a decision on August 29, 2017, concluding that Ms. S. was not entitled to receive DIB or SSI. [ECF No. 7-2 at 14.] The Appeals Council denied review on December 8, 2017. [ECF No. 7-2 at 2.] On February 5, 2018, Ms. S. timely filed this civil action

---

[1] In an attempt to protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

asking the Court to review the denial of benefits according to 42 U.S.C. §§ 405(g) and 1383(c).  [ECF No. 1.]

# I.
## STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits … to individuals with disabilities." *Barnhart v. Walton,* 535 U.S. 212, 214 (2002).  "The statutory definition of 'disability' has two parts.  First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity.  Second, it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability.  The statute adds that the impairment must be one that has lasted or can be expected to last … not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).  For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).  Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008), this Court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart,* 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v),[2] evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(iv), (v). The burden of proof is on the claimant for Steps One

---

[2] The Code of Federal Regulations contains separate sections relating to DIB and SSI that are identical in most respects relevant to this case. For the sake of simplicity, this Entry generally contains citations to DIB sections only.

through Four; only at Step Five does the burden shift to the Commissioner.  *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Barnett*, 381 F.3d at 668.  When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy.  *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).  An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion."  *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. S. was 43 years of age at the time she applied for DIB and SSI.  [ECF No. 7-5 at 2.]  She has completed two years of college and previously worked as a bartender, cashier, office worker, factory laborer, and qualified medication aide and certified nursing assistant in nursing homes.  [ECF No. 7-6 at 12.][3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Ms. S. was not disabled.  [ECF No. 7-2 at 31.]  Specifically, the ALJ found as follows:

---

[3] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

- At Step One, Ms. S. had not engaged in substantial gainful activity[4] since April 26, 2016, the day after a previous determination of the SSA.[5]  [ECF No. 7-2 at 20.]

- At Step Two, she had the following severe impairments: "fibromyalgia syndrome (FMS), an obese body habitus, an anxiety disorder, and an affective disorder."  [ECF No. 7-2 at 21 (internal citations and footnote omitted).]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  [ECF No. 7-2 at 22.]

- After Step Three but before Step Four, she had the RFC "to lift 20 pounds occasionally and 10 pounds frequently, stand and/or walk for up to 6 hours in an 8[-]hour work period, and sit for up to 6 hours in an 8[-]hour work period. The claimant can never climb ladders, ropes, or scaffolds or working [sic] around hazards such as unprotected heights or moving machinery.  The claimant can occasionally balance, stoop, kneel, crouch, and/or crawl.  The claimant can frequently reach overhead with the right upper extremity.  The claimant must avoid all exposure to work in bright sunlight.  The claimant is limited to a moderate noise environment such as an office or retail establishment.  The claimant can understand, remember, and carryout simple, routine, repetitive tasks of one to four steps and where only occasional decision-making is required.  The claimant is limited to work in an environment without fast-paced reduction [sic] requirements or an hourly or less quota.  Lastly, the claimant can tolerate occasional interaction with coworkers, supervisors, and the general public."  [ECF No. 7-2 at 24.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Ms. S.'s RFC, she was incapable of performing her past relevant work as a nurse's assistant.  [ECF No. 7-2 at 30.]

---

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

[5] Although Ms. S. alleged disability beginning March 1, 2013, she had previously filed a claim for benefits that was decided unfavorably by a previous ALJ on April 25, 2016.  [ECF No. 7-2 at 17 (citing ECF No. 7-3 at 2).]  Because Ms. S. did not appeal that determination, the ALJ concluded that the decision had become administratively final and he did not see any justification to reopen the claim under the SSA's rules, which precludes any further consideration of the adjudicated period through the date of the decision under the doctrine of *res judicata*.  [ECF No. 7-2 at 17-18 (citing 20 C.F.R. § 404.959(c)(1)).]  Accordingly, the ALJ's subsequent findings were limited to the period beginning with the day after the prior determination, April 26, 2016 (the "constructive onset date"), through the date of the instant decision.  *See e.g.,* [ECF No. 7-2 at 31.]  Ms. S. does not challenge the use of the constructive onset date.  [ECF No. 11 at 3.]

- At Step Five, relying on VE testimony and considering Ms. S.'s age, education, and RFC, there were jobs that existed in significant numbers in the national economy that she could have performed through the date of the decision. [ECF No. 7-2 at 30-31.]

## III.
### DISCUSSION

Ms. S. raises two assignments of error, that the ALJ (1) did not properly evaluate her migraines, and (2) did not properly evaluate her fibromyalgia according to Social Security Ruling ("SSR") 12-2p.

### A. Migraines

Ms. S. contends that the ALJ erroneously concluded that her migraines were not even a medically determinable impairment such that they did not qualify as a severe impairment at Step Two. [ECF No. 11 at 19.] She argues that "[e]ssentially, the ALJ has dismissed the entire medical record documentation of [Ms. S.'s] intractable migraine headaches as a mere allegation of a [sic] symptoms." [ECF No. 11 at 19.] Ms. S. further contends that the ALJ erroneously relied on the absence of (1) clinical signs that established only that she did not have a migraine the day she visited a doctor, [ECF No. 11 at 21], and (2) objective diagnostic testing, [ECF No. 11 at 22]. Furthermore, she asserts that the ALJ failed to explain the effect of her migraines on her RFC, [ECF No. 11 at 23], and either misstated or misunderstood the medical record, [ECF No. 11 at 24].

As a threshold matter, the ALJ erred in failing to find that Ms. S.'s migraines were a medically determinable impairment. The record shows that multiple acceptable medical sources specifically diagnosed Ms. S. with migraines after

reviewing the same objective medical evidence that the ALJ summarized, including a treating specialist, Jon C. Finley, M.D., who is board certified in neurology and sleep medicine. [ECF No. 7-22 at 9-11 (diagnosing intractable classical migraine); ECF No. 7-21 at 52 (emergency room physician diagnosed migraine headache without aura).] As the Seventh Circuit observed in *Moore v. Colvin*, 743 F.3d 1118, 1125 (7th Cir. 2014), Ms. S. has "established that she suffers from chronic migraines, which are the type of impairment that can reasonably be expected to cause pain." Based on the determination that Ms. S.'s allegations of headaches did not establish a medically determinable impairment, the ALJ concluded that her migraines were not a severe impairment at Step Two. [ECF No. 7-2 at 21-22.]

However, the Court concludes that the ALJ's designation at Step Two was harmless error based on a review of the entire written decision. "Regardless, this particular determination is of no consequence with respect to the outcome of the case. Because the ALJ recognized numerous other severe impairments, he was obligated to proceed with the evaluation process." *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010) (quoting *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("Having found that one or more of [claimant's] impairments was 'severe,' the ALJ needed to consider the aggregate effect of the entire constellation of ailments.")). Here, the ALJ continued to analyze the evidence related to Ms. S.'s migraine impairment throughout the sequential evaluation process, including the treatment she received from Dr. Finley and the consistency of her alleged symptoms with the other evidence of record. *See, e.g.,* [ECF No. 7-2 at 28.] The ALJ's continued analysis of the

impairment differentiates the case from the precedential authority cited by Ms. S. in *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014), where the ALJ had ignored the line of evidence entirely.

While Ms. S. objects to the evidence of her migraine impairment being reduced to the mere allegation of symptoms, the Court notes that the evidence establishing the impairment is completely subjective, minimally bolstered by medical source statements that have relied on Ms. S.'s subjective reports to establish a diagnosis, as mentioned above, and functional limitations. *See* [ECF No. 7-25 at 6-10 (James T. Croner, M.D., a treating family medicine doctor, provided a physical RFC assessment based, in part, on recurrent headaches and concluded that Ms. S. would be likely to be absent from work more than four days per month.)]; *see also* [ECF No. 7-25 at 15-18 (Dr. Croner also completed a headaches medical source statement, indicating that Ms. S. has two headaches per week, lasting six to twenty-four hours, and would miss more than four days per month, but also opined that she would need unscheduled breaks during a working day "all day" especially with nausea and vomiting.).][6]

The remaining precedent that Ms. S. relies upon in support of her assignment of error establishes that the sufficiency of the ALJ's subjective symptom evaluation

---

[6] Ms. S. does not develop any argument that the ALJ erred in weighing the opinion evidence of record. While Ms. S. does reference one of the reasons that the ALJ gave for discrediting Dr. Croner's opinions, arguing that references in the record to intermittent headaches are not necessarily inconsistent with Ms. S. saying she has headaches two to three times a week, [ECF No. 11 at 21-22], Ms. S. does not cite any of the legal authority on weighing opinion evidence or engage the numerous other reasons the ALJ gave for assigning "very little deference" to Dr. Croner's opinions, [ECF No. 7-2 at 29]. Accordingly, the Court concludes that Ms. S. has waived any argument related to the opinion evidence. *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018), *reh'g denied* (Dec. 18, 2018) (quoting *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (Her "argument is 'perfunctory and undeveloped,' and therefore waived.")).

is critical to the overall analysis. For example, in *Moore v. Colvin*, 743 F.3d 1118, 1122-26 (7th Cir. 2014), the Seventh Circuit remanded, in part, because the ALJ failed to acknowledge any of the evidence contrary to the ALJ's conclusions in assessing the claimant's credibility. To a very limited extent, the Court agrees with Ms. S. that the ALJ appeared to stumble into the same pit-fall as the ALJ in *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014), *as amended on denial of reh'g* (Oct. 24, 2014), finding it significant in evaluation of the severity of Ms. S.'s migraines that diagnostic imaging was unremarkable, rather than recognizing that physicians use the testing to rule out other possible causes of a headache, such as a tumor. *See* [ECF No. 7-2 at 28.] However, the Seventh Circuit in *Moon* proceeded to analyze the following before finding reversible error, "[p]erhaps the ALJ's apparently dim view of Moon's testimony about her migraines resulted in part from his broader skepticism of her credibility, but his more general credibility assessment is problematic as well." *Moon*, 763 F.3d at 722. Accordingly, the Court's analysis of the assignment of error necessarily involves an evaluation of the ALJ's subjective symptom assessment.

As noted above, the Seventh Circuit requires the Court to accord the ALJ's credibility determination considerable deference, overturning it only if is it patently wrong. Reviewing courts examine whether a credibility determination was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [the Court] declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008); *Prochaska*, 454 F.3d at 738 ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported

can the finding be reversed.").  However, when the credibility determination rests on "objective factors or fundamental implausibilities rather than subjective considerations, appellate courts have greater freedom to review the ALJ's decision." *Clifford,* 227 F.3d at 872.

On March 28, 2016, Social Security Ruling ("SSR") 16-3p (S.S.A Oct. 25, 2017), 2017 WL 5180304, at *2, became effective, replacing SSR 96-7p, and providing new guidance regarding how a disability claimant's statements about the intensity, persistence, and limiting effects of symptoms are to be evaluated.  Under SSR 16-3p, an ALJ now assesses a claimant's subjective symptoms rather than assessing her "credibility."  *Id.*  The Seventh Circuit has explained that the "change in wording is meant to clarify that administrative law judges aren't in the business of impeaching claimants' character; obviously administrative law judges will continue to assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence."  *Cole v. Colvin,* 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original).  The standard used to review an ALJ's subjective symptom evaluation remains whether the assessment is patently wrong.

The Court finds that the ALJ's subjective symptom evaluation was not patently wrong.  To be clear, the ALJ's evaluation of the Ms. S.'s subjective symptoms was not perfect.  The ALJ properly cited the relevant authority to guide his assessment and concluded "that the claimant's medically determinable impairments could reasonably be expected to produce the above alleged symptoms [including

headaches]; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." [ECF No. 7-2 at 25-26.] The ALJ listed numerous reasons for doubting Ms. S.'s allegations, both generally, and specific to her migraines.

However, several reasons supplied by the ALJ were faulty. The ALJ explained, "Perplexingly, a number of issues were evident that eroded the persuasiveness of the claimant's allegations; for example, she admitted to marijuana use as recently as December 2015, while denying any illicit substance use in Exhibit B5E." [ECF No. 7-2 at 26 (internal citation omitted).] The form specified by the ALJ was not filled out by Ms. S. until June 30, 2016, and did not clearly ask about anything besides current use. [ECF No. 7-6 at 26.] Ms. S. also tested negatively for any traces of marijuana or other illegal substances during an admission on April 29, 2016. [ECF No. 7-15 at 2.] The specific reference to use of marijuana in December of 2015 further indicated that she was using "medical marijuana while being in Colorado." [ECF No. 7-15 at 18.] The answer provided on the form is not inconsistent with Ms. S. admitting prior use of marijuana.

The ALJ also cited generally to an entire exhibit that is eighty-seven pages long, "see generally Exhibit B7F," for the proposition that Ms. S. "confirmed that she was caring for a grandchild . . . ." [ECF No. 7-2 at 26.] However, the Court's review of the exhibit shows that she visited her daughter and grandson in Alaska, [ECF No. 7-16 at 19], later was anticipating her daughter and grandson staying with Ms. S.'s

parents (where Ms. S was also staying) for approximately four months following the birth of another child, [ECF No. 7-16 at 15], and that she enjoyed "being a grandmother to her grandson," [ECF No. 7-16 at 12]. The Seventh Circuit has found an ALJ's use of necessary childcare objectionable to establish the ability to work full-time when the ALJ ignored indications the claimant could take breaks and received assistance from family members. *See Gentle v. Barnhart*, 430 F.3d 865, 867-68 (7th Cir. 2005). Not only were the possible qualifications with childcare not explored by the ALJ, the records do not really suggest that Ms. S was regularly involved, if ever, in the care of her grandson, who was living in Alaska at one point.

Furthermore, the ALJ found that Ms. S had "provided inconsistent educational information" reporting in her current application that "she had some college level training." [ECF No. 7-2 at 27 (internal citation omitted) (citing ECF No. 7-6 at 12 (Ms. S told the SSA her highest level of education was "2 years of college" completed around 2007.)).] However, the ALJ noted that during a consultative examination "she reported that she had a mere 10th grade education, again suggesting that she reported information to the clinicians that [was] not entirely reliable." [ECF No. 7-2 at 27.] Ms. S testified that she completed the eleventh grade naturally and then later earned a GED. [ECF No. 7-2 at 45.] The information she provided to the SSA was not inaccurate. It's of dubious relevance to her truthfulness that she told a consultative examiner that she completed the tenth grade naturally, considering she also specifically "denied a history of learning difficulties or retentions." [ECF No. 7-16 at 90.] The report did not indicate how the question about

her education level was phrased and there is an ambiguity between the grade level she completed naturally and her subsequent efforts to improve her education.

When evaluating her allegations of headaches specifically, the ALJ also relied on other evidence that is also of dubious significance. The ALJ explained that Ms. S. "alleged severe headache deficits, but the undersigned could not reconcile these claims with the reported ability to go on vacation with family members, with the examining clinician noting no deficits on exam." [ECF No. 7-2 at 28.] The ALJ does not explain how the ability to go on vacation with family members is inconsistent with having less severe tension headaches on most days, and episodically or intermittently more severe migraines.

However, the ALJ did cite to evidence that does not reflect well on Ms. S.'s credibility. For instance, Ms. S. testified that she did not do any of the laundry, adding the "[l]ast time I tried that a few years ago, I fell down the steps, so." [ECF No. 7-2 at 56 (She also testified in follow-up that her fiancé does the chores.).] The ALJ noted that this testimony was inconsistent with the information Ms. S. had reported to a consultative examiner. [ECF No. 7-2 at 63.] "The claimant stated that she is able to perform some household tasks including cooking, cleaning, and laundry but stated that her physical pain and low motivation interfere with doing them regularly." [ECF No. 7-16 at 91.]

Ms. S. also testified to pain in her right hip that feels "like, it comes out of socket and I can't put any weight on it." [ECF No. 7-2 at 48.] She reported similar symptoms to the SSA when appealing her initial determination describing how her

condition had changed in June 2016. "My right hip dislocates and I cannot walk right. It's so very painful." [ECF No. 7-6 at 33.] However, the ALJ noted that a hip dislocation had not been objectively verified. [ECF No. 7-2 at 27.] On June 28, 2016, she did report the symptoms to her treating provider. [ECF No. 7-17 at 48.] However, on examination the only finding was tenderness in the right hip flexor region and she was diagnosed with right hip pain, probably "flexor strain," but no dislocation was appreciated. [ECF No. 7-17 at 49-50.] She was discharged from physical therapy after only three sessions and it was noted that "[s]he says she is better. She had to help her fiancé pick some corn by hand and her back started to bother her so she quit." [ECF No. 7-22 at 37.]

The ALJ "was also concerned about the claimant's request for records immediately upon discharge [from an inpatient admission secondary to reports of suicidal ideations] reporting that this would help her in seeking disability." [ECF No. 7-2 at 26 (internal citation omitted).] The discharge notes stated that "she was eager to get her records to her attorneys as she hopes to get disability money coming." [ECF No. 7-15 at 3.]

Under the deferential standard, an ALJ's subjective symptom evaluation need not be perfect. In *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011), the Seventh Circuit explained "[a]lthough we find some deficiencies in the ALJ's discussion of McKinzey's credibility, we conclude that the ALJ has pointed to sufficient evidence in the record to justify [his] negative determination." "The ALJ's credibility determination was not without fault. Indeed, we see some merit in two out of three

of McKinzey's attacks." *Id.* However, the Seventh Circuit upheld the ALJ's credibility determination because the ALJ had accurately indicated that "the record includes evidence strongly suggesting that claimant has exaggerated symptoms and limitations." *Id.* at 891. The Court concludes that the ALJ cited enough evidence suggesting that Ms. S.'s credibility was generally compromised.

Moreover, when evaluating Ms. S.'s migraines in particular, the ALJ made specific findings that undermine the severity of her symptoms. The ALJ thoroughly documented that the record lacked any indication that Ms. S.'s providers had observed signs of her symptoms on examination. For example, the ALJ noted that in the period at issue beginning with the constructive onset date and after "the implementation of a prescription medication regimen, no clinician noted photo/phonophobic behavior" [. . .] hygienic deficits, [. . .] or eye contact limitations (Exhibit B20F)." [ECF No. 7-2 at 28.] While the lack of clinical indications are not necessarily inconsistent with the possibility that Ms. S. simply did not have a migraine during the specific examinations, the complete lack of such observations in the record is at least suggestive that she did not have symptoms as frequently as she alleged.

Furthermore, the ALJ noted one example that is more directly inconsistent with Ms. S.'s allegations. "There was an emergency room visit for complaints of headache like symptomatology, but the claimant was also described as pleasant, and cooperative (Exhibits B12F. B13F)." [ECF No. 7-2 at 28.] On October 31, 2016, the emergency room visit notes indicated that Ms. S. had complained of a "headache since

morning" that "[f]eels like a typical migraine for her" which was not relieved by her medication, including Maxalt. [ECF No. 7-21 at 48.] However, her general physical exam indicated that she was not in any acute distress and was completely oriented, pleasant, and cooperative. [ECF No. 7-21 at 51.] Taken together, the Court concludes that there was enough evidence for the ALJ to discount the alleged severity of Ms. S.'s subjective symptoms, such that the ALJ did not error in concluding that her RFC did not need to include limitations that fully credited her need for breaks and absences.

### B. Fibromyalgia

Ms. S. argues that the ALJ failed to follow the mandates of SSR 12-2p in evaluation of her fibromyalgia. [ECF No. 11 at 26.] Specifically, in part, she argues that the ALJ did not adequately considered whether her fibromyalgia equaled a listing. [ECF No. 11 at 27.] Furthermore, Ms. S. contends that the ALJ impermissibly "played doctor." [ECF No. 11 at 28.]

The Court does not find any error of law based on an alleged failure of the ALJ to follow the requirements of SSR 12-2p. "Social Security Rulings are binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1). "This ruling provides guidance on how we develop evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how we evaluate fibromyalgia in disability claims and continuing disability reviews under titles II and XVI of the Social Security Act." SSR 12-2p (S.S.A. July 25, 2012), 2012 WL 3104869, at *1. The ruling specifies how fibromyalgia is to be considered at each of the five

steps of the sequential disability evaluation process described above, but also describes a specific two-step symptom evaluation process. *Id*. at *5–6. The first step of the symptom evaluation process is not at issue, as the ALJ determined that fibromyalgia was a severe medically determinable impairment ("MDI"), [ECF No. 7-2 at 21], which along with Ms. S.'s other impairments, could reasonably be expected to cause her alleged symptoms, [ECF No. 7-2 at 25-26]. "Once an MDI is established, we then evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work." SSR 12-2p, 2012 WL 3104869, at *5. The Ruling goes on to state that:

> If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms. As we explain in SSR 96-7p, we will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning.

*Id.*

As to the second step of the symptom evaluation process, the Court notes that SSR 12-2p cites to SSR 96-7p for guidance as to how an ALJ should evaluate a claimant's statements regarding the effects of fibromyalgia symptoms on their functioning. *Id.* As noted above, SSR 96-7 has since been rescinded and replaced with SSR 16-3p. Based on the date of the determination, the ALJ correctly cited the applicable language of SSR 16-3p in evaluation of Ms. S.'s subjective symptoms. [ECF

No. 7-2 at 25.] For the reasons discussed above, the Court has already concluded that the ALJ cited enough evidence to suggest that Ms. S. was not completely credible. Additionally, the ALJ accurately noted that despite allegations of disabling symptoms from fibromyalgia, she did not seek treatment with a specialist for the condition during the period at issues. [ECF No. 7-2 at 30.] The Court has determined that the ALJ's subjective symptom evaluation was not patently wrong and will not repeat the relevant analysis here, but will address Ms. S.'s remaining arguments.

SSR 12-2p describes how fibromyalgia (here, "FM") is considered at Step Three of the sequential disability evaluation process:

> FM cannot meet a listing in appendix 1 because FM is not a listed impairment. At step 3, therefore, we determine whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

SSR 12-2p, 2012 WL 3104869, at *6. Here, the ALJ acknowledged that there was no listing for fibromyalgia, before conclusively asserting that no listing was met or equaled. [ECF No. 7-2 at 22.]

In the alternative to meeting a listing, a claimant can establish "medical equivalence" in the absence of one or more of the findings if she has other findings related to the impairment or has a combination of impairments that "are at least of equal medical significance." *See* 20 C.F.R. § 404.1526(a)-(b). In considering whether a claimant's condition meets or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing. *See Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); *Scott v. Barnhart*, 297

F.3d 589, 595-96 (7th Cir. 2003). However, the Seventh Circuit has held that in the absence of a contradictory medical opinion, where there is no significant evidence to support a listing, the ALJ can rely on the consultant reviewing opinions that no listing is met or equaled, even without articulating such reliance in the decision. *Scheck v. Barnhart*, 357 F.3d 697, 700-01 (7th Cir. 2004) (citing *Steward v. Bowen*, 858 F.2d 1295, 1299 (7th Cir. 1988)). The Seventh Circuit precedent is consistent with the ALJ's burden under SSR 96-6p, which states:

> The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) or SSA-832-U5 or SSA-833-U5 (Cessation or Continuance of Disability or Blindness) ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review. Other documents, including the Psychiatric Review Technique Form and various other documents on which medical and psychological consultants may record their findings, may also ensure that this opinion has been obtained at the first two levels of administrative review.
>
> When an administrative law judge or the Appeals Council finds that an individual[']s impairment(s) is not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by any of the foregoing documents signed by a State agency medical or psychological consultant.

SSR 96-6p (S.S.A. July 2, 1996), 1996 WL 374180 at *3. Here, the state agency reviewing consultants completed the disability transmittal forms. [ECF No. 7-3 at 56-57; ECF No. 7-3 at 90-91.] The reviews indicated that fibromyalgia was specifically considered. [ECF No. 7-3 at 46; ECF No. 7-3 at 65.]

Ms. S. challenges the sufficiency of the ALJ's listing analysis as it pertains to her fibromyalgia impairment. However, Ms. S. does not present any evidence of

record in support of an argument that any of her impairments satisfy specific requirements of any listing, nor does she present evidence suggesting that her fibromyalgia or combination of impairments equal the severity of any listing's requirements. *See* [ECF No. 11 at 27.] To demonstrate that an ALJ's listing conclusion was not supported by substantial evidence, the claimant must identify evidence of record that was misstated or ignored which met or equaled the criteria. *See, e.g., Sims v. Barnhart*, 309 F.3d 424, 429-30 (7th Cir. 2002). There is also no conflicting medical opinion to rebut the presumption that medical equivalence has not been established. Absent such evidence establishing a colorable claim, the Court does not find any demonstrated error with the ALJ's listing analysis.

Similarly, Ms. S. does not articulate how the ALJ "impermissibly played doctor" by providing any specific example of the ALJ making a medical determination about the type of evidence required to prove disability based on fibromyalgia or interpreting the significance of any medical findings. *See* [ECF No. 11 at 28.] Regardless, fibromyalgia is an impairment that often alludes objective indications of its severity, such that the Seventh Circuit has described that "its symptoms are entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). An assessment of the severity of Ms. S.'s subjective symptoms caused by her fibromyalgia is an undertaking reserved almost exclusively, if not entirely to the ALJ. *See Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018). As explained above, the Court does not conclude that the ALJ's subjective symptom evaluation was patently wrong.

# IV.
## CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* Taken together, the Court can find no legal basis presented by Ms. S. to reverse the ALJ's decision that she was not disabled during the relevant period. Therefore, the decision below is **AFFIRMED**. Final judgment will issue accordingly.


Date: 3/6/2019

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana


Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
kathryn.olivier@usdoj.gov

Christie O'Brien Tate
SOCIAL SECURITY ADMINISTRATION
christie.tate@ssa.gov